## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

WILLIAM LARGE,

      Plaintiff,

      v.                                      No. 1:20-CV-00005-RB-KRS

ANDREW SAUL, Commissioner of
the Social Security Administration,

      Defendant.

### PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

Plaintiff seeks review of the Commissioner's determination that he is not entitled to disability insurance benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 401-34, 1381-83f. On January 8, 2020, in accordance with 28 U.S.C. § 636(b)(1)(B), (b)(3), this case was referred to United States Magistrate Judge Kevin R. Sweazea to conduct any necessary hearings and to recommend an ultimate disposition. (*See* Doc. 7). Having considered Plaintiff's Motion to Reverse and Remand for a Rehearing (Doc. 17), filed June 22, 2020, the Commissioner's response in opposition (Doc. 21), filed August 28, 2020, and Plaintiff's reply (Doc. 22), filed October 1, 2020, the undersigned RECOMMENDS that the Court GRANT Plaintiff's motion for the reasons set forth below.

### I.  PROCEDURAL BACKGROUND

On April 3, 2014, Plaintiff protectively filed initial applications for disability insurance benefits and supplemental security income. (*See* Administrative Record ("AR") at 156, 166). Plaintiff originally alleged that he had become disabled on September 20, 2007, due to back injury, diabetes, high blood pressure, high cholesterol, asthma, restless leg syndrome, perforated

disc, and post-traumatic stress disorder. (*Id.* at 157, 167). His application was denied on July 8, 2014. (*Id.* at 156, 166).

Administrative Law Judge Raul C. Pardo (the "ALJ") conducted a hearing at Plaintiff's request on July 27, 2016. (*See id.* at 91-151). On January 31, 2017, the ALJ issued a decision finding that Plaintiff was not disabled under the relevant sections of the Social Security Act. (*Id.* at 182-95). After Plaintiff requested review of the decision (*see id.* at 318), the Appeals Council remanded the matter to the ALJ for further proceedings (*id.* at 200-01, 330-32).

The ALJ conducted a second hearing on July 18, 2018. (*See id.* at 47-85). Plaintiff was represented by counsel and testified at the hearing. (*Id.* at 47, 51-78). Vocational expert Phunda P. Yarbrough also testified at the hearing. (*See id.* at 74-84). Prior to this hearing, Plaintiff amended his alleged onset date to April 3, 2013. (*Id.* at 449).

The ALJ issued his second decision on August 24, 2018, again holding that Plaintiff was not disabled. (*Id.* at 22-38). Plaintiff once again requested review by the Appeals Council (*id.* at 8-9), and on November 4, 2019, the Appeals Council denied the request for review (*id.* at 1-3), which made the ALJ's decision the final decision of the Commissioner. On January 3, 2020, Plaintiff filed his complaint seeking review of the Commissioner's decision. (Doc. 1).

## II. LEGAL STANDARDS

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016); *see also* 42 U.S.C. § 405(g). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *See, e.g.*, *Langley v.*

*Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). Although a court must meticulously review the entire record, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *See, e.g.*, *id.* (quotation omitted).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted); *Langley*, 373 F.3d at 1118 (quotation omitted). Although this threshold is "not high," evidence is not substantial if it is "a mere scintilla," *Biestek*, 139 S. Ct. at 1154 (quotation omitted); "if it is overwhelmed by other evidence in the record," *Langley*, 373 F.3d at 1118; or if it "constitutes mere conclusion," *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005) (quotation omitted). Thus, the Court must examine the record as a whole, "including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan*, 399 F.3d at 1262. While an ALJ need not discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence," and "a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). "Failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (quotation omitted).

**B.   Disability Framework**

"Disability," as defined by the Social Security Act, is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The

3

Social Security Administration ("SSA") has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); *Wall v. Astrue*, 561 F.3d 1048, 1051-52 (10th Cir. 2009); 20 C.F.R. §§ 404.1520, 416.920. If a finding of disability or non-disability is directed at any point, the SSA will not proceed through the remaining steps. *Thomas*, 540 U.S. at 24. At the first three steps, the ALJ considers the claimant's current work activity and the severity of his impairment or combination of impairments. *See id.* at 24-25. If no finding is directed after the third step, the Commissioner must determine the claimant's residual functional capacity ("RFC"), or the most that he is able to do despite his limitations. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). At step four, the claimant must prove that, based on his RFC, he is unable to perform the work he has done in the past. *See Thomas*, 540 U.S. at 25. At the final step, the burden shifts to the Commissioner to determine whether, considering the claimant's vocational factors, he is capable of performing other jobs existing in significant numbers in the national economy. *See id.*; *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

### III.  THE ALJ'S DETERMINATION

The ALJ reviewed Plaintiff's claims pursuant to the five-step sequential evaluation process. (AR at 23-24). First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of April 3, 2013. (*See id.* at 24). The ALJ then found at step two that Plaintiff suffered from the following severe impairments: osteoarthritis of the hips, degenerative arthritis of the right knee, osteoarthritis of the shoulders, degenerative disc disease of the lumbar spine, asthma, obesity, hypertension, diabetes mellitus, depression, anxiety, post-traumatic stress disorder, and cannabis use disorder. (*See id.* at 25). At step three, the ALJ

concluded that Plaintiff did not have an impairment or combination of impairments which met the criteria of listed impairments under Appendix 1 of the SSA's regulations. (*See id.* at 25-28).

Proceeding to the next step, the ALJ reviewed the evidence of record, including medical evidence from treating physicians, medical evidence from consultative examiners, and Plaintiff's own subjective symptom evidence. (*See id.* at 29-36). In doing so, the ALJ accorded little weight to the opinions of treating physician John C. Franco, M.D. (*see id.* at 34), and to the opinions of consultative examining psychologist Steven K. Baum, Ph.D. (the "CE") (*see id.* at 35-36). Based on his review of the record evidence, the ALJ concluded that Plaintiff possessed an RFC to perform sedentary work with certain physical and mental limitations. (*See id.* at 28).

Moving to step five, the ALJ determined that while Plaintiff is unable to perform any past relevant work, he could perform other jobs existing in significant numbers in the national economy. (*See id.* at 36-37). The ALJ therefore concluded that Plaintiff's work was not precluded by his RFC and that he was not disabled. (*See id.* at 37-38).

## IV. DISCUSSION

Plaintiff challenges the ALJ's assessment of Dr. Franco's opinions (*see* Doc. 17 at 15-18), his weighting of the CE's opinions (*see id.* at 18-25), and his findings at step five (*see id.* at 12-15). Although the undersigned concludes that the ALJ's evaluation of the treating physician's opinions was appropriate, the undersigned recommends that the Court grant Plaintiff's motion to remand so that the ALJ may properly evaluate the consultative examiner's opinions consistent with controlling legal standards. Because this reassessment could affect the ALJ's findings at later steps of the sequential evaluation process, the undersigned further recommends that the Court decline to reach Plaintiff's claims of error concerning the ALJ's step-five determinations. *See, e.g.*, *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

## A.   Treating Physician Opinions

Plaintiff was treated by Dr. Franco for hip pain for less than a year, from November 2016 through August 2017. (*See generally* AR at 746-887). Following initial examinations and imaging, Dr. Franco diagnosed Plaintiff with osteoarthritis and femoroacetabular impingement of the right hip and performed arthroscopic surgery on that hip in December 2016. (*See, e.g.*, *id.* at 847-48, 874-77, 885-87, 946-48). After Plaintiff subsequently complained of additional pain on his left side, Dr. Franco diagnosed femoroacetabular impingement of the left hip and performed arthroscopic surgery on that hip in May 2017. (*See, e.g.*, *id.* at 764-66, 794-97, 804-06, 950-52). A period of physical therapy followed each surgery (*see, e.g.*, *id.* at 751-63), and after an August 2017 examination, Dr. Franco concluded that Plaintiff's right hip was "doing relatively well" and that he had "full range of motion" and "really no pain in the left side" (*see id.* at 746-48). However, in an October 2017 assessment, Dr. Franco opined that Plaintiff had limitations that exceeded those eventually assessed by the ALJ as part of Plaintiff's RFC. (*See id.* at 679-80).

The ALJ accorded Dr. Franco's opinion "little weight," concluding that while he had a treating and examining relationship with Plaintiff and opined within his area of specialty, his opinion was not supported by the notes from his August 2017 examination. (*See id.* at 34). Plaintiff argues that the ALJ failed to discuss relevant evidence in the treatment notes from Dr. Franco and his colleagues and failed to consider whether Dr. Franco's opinions were supported by his subjective symptom evidence. (*See* Doc. 17 at 15-18). The Commissioner responds that Dr. Franco's opinions were inconsistent with Plaintiff's subjective symptom evidence and the record as a whole. (*See* Doc. 21 at 12-13).

SSA regulations provide that an ALJ should "[g]enerally, . . . give more weight to opinions from [claimant's] treating sources." *See Watkins*, 350 F.3d at 1300 (citing 20 C.F.R.

§ 404.1527(c)(2)).[1] Usually "[t]he treating physician's opinion is given particular weight because of his 'unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.'" *See Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003) (quoting 20 C.F.R. § 416.927(c)(2)). However, the general rule concerning treating physicians gives way under certain circumstances. If the ALJ finds that the treating physician's opinion is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or is not "consistent with other substantial evidence in the record," then the ALJ may choose to afford less than controlling weight to the physician's opinion. *See Watkins*, 350 F.3d at 1300 (citing SSR 96-2p, 1996 WL 374188, at *2 (July 2, 1996)[2]). In such cases, the ALJ must consider certain factors in determining what weight to assign to the opinion, including

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*See id.* (quoting *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001)).

Although the ALJ need not expressly discuss all of these factors, he must fully consider them and give "good reasons" for his weighting of the treating physician's opinions. *See id.*; *see also Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (citing SSR 06-03p, 2006 WL

---

[1] Plaintiff's claims were filed before March 27, 2017, meaning that the new regulations concerning the handling of medical opinion evidence found at 20 C.F.R. § 404.1520c and 20 C.F.R. § 404.920c do not apply to this proceeding. Although Plaintiff applied for benefits under both Title II and Title XVI, the undersigned hereinafter cites only to the regulations promulgated under Title II and does not also cite to the parallel regulations under Title XVI.
[2] SSRs are binding on the SSA, and while they do not have the force of law, courts traditionally defer to SSRs since they constitute the agency's interpretation of its own regulations and foundational statutes. *See Sullivan v. Zebley*, 493 U.S. 521, 531 n.9 (1990); 20 C.F.R. § 402.35; *see also Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993) (SSRs entitled to deference).

2329939, at *5 (Aug. 9, 2006)) (recognizing that "[n]ot every factor for weighing opinion evidence will apply in every case"). In particular, "[t]he record must demonstrate that the ALJ considered all of the evidence," and he must discuss not just the evidence supporting his decision, but also "the uncontroverted evidence he chooses not to rely upon" and "significantly probative evidence he rejects." *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996). Further, the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008) (quotation omitted).

The ALJ's assessment of Dr. Franco's October 2017 opinions principally turned on its apparent inconsistency with Dr. Franco's final post-surgery examination findings in August 2017. (*See* AR at 34). At that visit, Dr. Franco found that Plaintiff was suffering from "minimal" and "manageable" pain in his hips (and in fact "den[ying] any pain" in his left hip), exhibiting "excellent" post-operation results, possessing a "normal" gait, ambulating without an assistive device, and showing full strength and improved range of motion in his left hip. (*See id.* at 746-48). Plaintiff himself described his condition to Dr. Franco as "doing fine." (*See id.* at 746). Aside from "minimal swelling" and numbness near the site of Plaintiff's most recent operation, Dr. Franco's final treatment notes describe essentially no problems. (*See id.* at 746-48). In the end, Dr. Franco stated that Plaintiff did not need to return  to him for further treatment except "as needed." (*Id.* at 748). No further treatment from Dr. Franco is noted in the record.

By addressing these factors and others in assessing Dr. Franco's opinions, the ALJ complied with governing legal standards. The ALJ held that Dr. Franco's assessment of relatively restrictive limitations was not entitled to controlling weight because that assessment was not supported by the findings of his final examination of Plaintiff just two months earlier.

(*See id.* at 34). This determination followed the relevant standards. *See Watkins*, 350 F.3d at 1300 (permitting ALJ to accord treating physicians' opinions less-than-controlling weight when those opinions are not "well-supported by medically acceptable clinical and laboratory diagnostic techniques").[3] Similarly, although the ALJ thereafter took note of Dr. Franco's specialization and his treatment and examining relationship with Plaintiff, he concluded that Dr. Franco's opinions were nonetheless entitled to little weight because those opinions were not supported by relevant medical evidence in the form of his August 2017 findings. (*See* AR at 34). This conclusion, too, was reached in accordance with the proper legal standards. *See* 20 C.F.R. § 404.1527(c)(1)-(3), (5); *see also, e.g.*, *Jones v. Colvin*, 610 F. App'x 755, 758 (10th Cir. 2015) (unpublished) (citing *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002)) ("The lack of affirmative support in the medical record is a legitimate consideration at both steps of [the] treating physician analysis."). And in light of the notes illustrating clear post-surgery improvement in the conditions for which Dr. Franco was treating Plaintiff, the undersigned cannot say that the ALJ's determinations on these points were unsupported by substantial evidence. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (holding that substantial-evidence standard is "not high"); *see also, e.g.*, *Newbold v. Colvin*, 718 F.3d 1257, 1266 (10th Cir. 2013) (affirming ALJ's according of "diminished weight" to treating physician whose opinions were inconsistent with his treatment notes).[4]

---

[3] Because the ALJ properly applied controlling legal standards on this question, the Court need not address Plaintiff's argument that there is a pertinent distinction between determining that a medical opinion is "consistent" with substantial evidence and determining that it is "*not in*consistent" with substantial evidence. (*See* Doc. 22 at 5); *see also Watkins*, 350 F.3d at 1300 (citing SSR 96-2p, 1996 WL 374188, at *2) (noting that "the inquiry at this stage is complete" if an ALJ determines that a medical opinion is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques").

[4] Although Plaintiff complains that "citations to only a single visit hardly seems to constitute substantial evidence" (*see* Doc. 17 at 17), he insists elsewhere that he is only challenging the ALJ's application of controlling legal standards to his evaluation of Dr. Franco's opinion, not whether that opinion was supported by substantial evidence (*see* Doc. 22 at 6). In any event, for the reasons discussed, Dr. Franco's final post-surgery treatment notes amount to

Plaintiff faults the ALJ for failing to account for Dr. Franco's findings of greater limitations at earlier visits. (*See* Doc. 17 at 17). In fact, the ALJ meticulously described Plaintiff's treatment history with Dr. Franco and his colleagues—including Dr. Franco's pre-surgery diagnoses, earlier treatments performed by other specialists at the same clinic, and subsequent treatment by these specialists—at other points in his decision. (*See* AR at 30-31). However, the ALJ was also permitted to consider the fact that Dr. Franco's notes, when viewed together, showed that the conditions for which Plaintiff sought treatment from Dr. Franco had improved post-surgery. *See* 20 C.F.R. § 404.1527(c)(3); *see also, e.g.*, *Green v. Comm'r of Soc. Sec. Admin.*, 18-cv-210 KEW, 2019 WL 4750230, at *4 (E.D. Okla. Sept. 30, 2019) (affirming ALJ weighting of treating physician opinions which were "inconsistent with the other evidence in the record, including the muscle testing performed by [him] on the same day he completed the medical source statement"); *Erwin v. Astrue*, No. 07-cv-1313 MLB, 2008 WL 2050851, at *4-5 (D. Kan. May 13, 2008) (finding no error in ALJ's rejection of treating physician opinions which were "in direct contrast to the statements, at the same time, of function and improvement found in the treatment notes").

Plaintiff also appears to argue that the ALJ erred by failing to list additional clinical impressions purportedly noted during Dr. Franco's August 2017 examination. (*See* Doc. 17 at 16-17) (citing AR at 747-48). However, a complete review of Dr. Franco's treatment notes reveals that these impressions are residual—that is, cumulatively carried over from his earlier treatment notes concerning Plaintiff—and are not indicative of Plaintiff's condition at the time of Dr. Franco's final examination. (*See, e.g.*, AR at 765-66, 796) (same impressions recorded in April and May 2017); (*id.* at 848-49, 874-75) (same impressions as to right hip and lumbar

---

"more than a mere scintilla" of evidence and are "adequate to support [the ALJ's] conclusion" regarding the weight of Dr. Franco's opinions. *See Biestek*, 139 S. Ct. at 1154.

region recorded in November and December 2016). This is most plainly illustrated by the inclusion of the impression "[p]ain in left hip"—a diagnosis reached during Dr. Franco's pre-surgery examinations—despite the observation several lines later that Plaintiff had "really no pain the left side" after his surgery. (*See id.* at 747-48). Similarly, the leftover impression of "[m]uscle weakness" is contradicted by Dr. Franco's contemporaneous notes, which appear to indicate that Plaintiff had full strength in his left-hip muscle regions. (*See id.*). Because Dr. Franco's own notes supported the conclusion that these outdated clinical impressions had resolved as of August 2017, the ALJ did not err in failing to recount them when assessing the supportability of Dr. Franco's opinions.

Finally, Plaintiff implies that the ALJ erroneously failed to address probative supporting evidence in the form of his own July 2018 hearing testimony, where he described ongoing hip pain and the possibility of a future hip replacement. (*See* Doc. 17 at 17). On the contrary, the ALJ expressly discussed Plaintiff's testimony on this point. (*See* AR at 29). Notably, the ALJ also concluded that Plaintiff's subjective symptom evidence on these points was inconsistent with the record as a whole (*see id.*), a determination that Plaintiff does not contest in this proceeding. But even if this were not so, the ALJ's decision to give greater weight to Dr. Franco's August 2017 findings than to Plaintiff's subjective symptom evidence was within his purview, and the Court may not direct the ALJ to resolve these allegedly conflicting data points in a different manner. *See, e.g.*, *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (holding that a reviewing court may not "displace the agency's choice between two fairly conflicting views, even though the [C]ourt would justifiably have made a different choice had the matter been before it de novo"); *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("[T]he ALJ is entitled to resolve any conflicts in the record . . . .").

As long as an ALJ gives "good reasons for the decision that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating source's medical opinion and the reason for that weight," his weighting of that opinion will not be disturbed. *See Praytor v. Comm'r, SSA*, 750 F. App'x 723, 726 (10th Cir. 2018) (unpublished) (quoting *Newbold*, 718 F.3d at 1265-66). Here, the ALJ weighed Dr. Franco's opinions in accordance with governing legal standards and supported the assigned weight by reference to substantial evidence. "Nothing more was required in this case." *See Oldham,* 509 F.3d at 1258. The undersigned therefore recommends that the Court decline to remand on this basis.

### B.   Consultative Examiner's Opinions

The CE conducted an examination of Plaintiff on June 26, 2018. (*See* AR 1014-17, 1019-23). In the course of this evaluation, the CE spent two hours interviewing Plaintiff, half an hour considering statements from his spouse, three hours reviewing his medical records, and two hours conducting psychological testing. (*See id.* at 1014). The CE administered a Minnesota Multiphasic Personality Inventory ("MMPI-2") as part of this process, but he concluded that the results featured an "invalid" F scale that "preclude[d] a full and reliable profile." (*Id.* at 1015). The CE also noted that, although Plaintiff was "psychotic and in pain," a full cognitive screen was unnecessary because Plaintiff "was still able to concentrate and correctly answer basic cognitive items." (*See id.*). Following his evaluation, the CE drafted a "Statement of Functional Abilities" stating that Plaintiff possessed multiple limitations of varying severity, including a "mild" limitation in understanding and remembering simple instructions and more serious limitations in other abilities. (*See id.* at 1016). The CE also included with his report a completed "medical assessment" checklist in which he noted limitations that were largely—but not entirely—consistent with his "Statement of Functional Abilities." (*See id.* at 1020).

On July 10, 2018, the CE completed an "Amended Evaluation" following half an hour of "re-testing" the previous day. (*See id.* at 1027-30). Although the exact nature and purpose of the re-testing is not explicitly stated in the Amended Evaluation, the CE did record new MMPI-2 results, which were this time noted as having "borderline validity and reliability" due to Plaintiff once again presenting an inconsistent F scale. (*See id.* at 1028). The CE also documented "unimpaired performance on the standard cognitive skill items" during this visit, "making the case for clinical rather than cognitive limitations." (*Id.*). The CE further noted a newly alleged "previously undocumented suicide attempt a year earlier" (*see id.* at 1027), added a "chronic pain" differential (*see id.* at 1028), and downgraded Plaintiff's limitations in understanding and remembering short and simple instructions from "mild" to "mild-moderate" (*see id.* at 1029).

The ALJ held that the CE's opinions were entitled to "little weight," in part because they relied on Plaintiff's subjective symptom allegations, but also because he found that the Amended Evaluation appeared intended to "downplay the unreliability" of those allegations "and to preclude a finding of ability to perform unskilled work." (*See id.* at 35-36). Plaintiff claims among other things that the ALJ misrepresented or misinterpreted the record, failed to properly resolve inconsistencies in the evidence, and impermissibly substituted his judgment for that of the CE. (*See* Doc. 17 at 18-25). The Commissioner contends that the ALJ generally followed the relevant legal standards and that his weighting of the CE's opinions was supported by substantial evidence. (*See* Doc. 21 at 13-16).

As an initial matter, Plaintiff argues that the ALJ should not have discounted the CE's opinions based on his reliance on Plaintiff's subjective reports of symptoms. (Doc. 17 at 21). In unpublished caselaw, the Tenth Circuit has acknowledged that "[t]he practice of psychology is necessarily dependent, at least in part, on a patient's subjective statements." *See Thomas v.*

*Barnhart*, 147 F. App'x 755, 759 (10th Cir. 2005) (unpublished). Moreover, "a consulting, examining physician's testimony is normally supposed to be given more weight than a consulting, non-examining physician's opinion." *Id.* at 760 (citing *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004)). As such, "[t]he ALJ cannot reject [a CE's] opinion *solely* for the reason that it was based on [a claimant's] responses because such rejection impermissibly substitutes [the ALJ's] judgment for that of [the CE]." *Id.* (citing *Winfrey v. Chater*, 92 F.3d 1017, 1022 (10th Cir. 1996)) (emphasis added). Trial courts therefore routinely reject an ALJ's substitution of her own "lay speculation and assumptions" where an examining medical provider's contrary opinion was "supported by tests, evaluations, and reports." *See, e.g.*, *Garcia v. Berryhill*, No. 16-cv-1034 CG, 2017 WL 3328184, at *4 (D.N.M. Aug. 3, 2017) (finding error where ALJ assigned only "partial weight" to examining provider's opinions concerning severity of limitations and instead concluded from her own observations that claimant "appeared capable in most social situations").

On the other hand, "*Thomas* does not stand for the proposition that an ALJ cannot, in determining *what weight to assign an opinion*, consider that the opinion is based on subjective information provided by the claimant." *Houston v. Colvin*, 180 F. Supp. 3d 877, 888 (D.N.M. 2016) (citing 147 F. App'x at 759-60). "Although the ALJ cannot substitute his judgment for that of a psychiatrist, the Tenth Circuit has not forbidden an ALJ from considering information unavailable to the psychiatrist that discredits the subjective statements on which the psychiatrist relied." *Id.* As long as the ALJ's weighting of a CE's opinion otherwise finds support in the record as a whole, that weighting should not be disturbed simply because the ALJ also noted that the opinion depended in part on the claimant's subjective statements. *See, e.g., id.* at 888-89 (rejecting challenge to weighting of CE opinion where RFC was consistent with other medical

and non-medical evidence); *see also Cindy S.C. v. Saul*, No. 18-cv-1307-JWL, 2019 WL
3943065, at *7 (D. Kan. Aug. 21, 2019) ("[I]f an ALJ could not discount a medical opinion
based on a fact the psychologist had already considered when formulating his opinion, that
would be tantamount to taking away the Commissioner's duty to weigh the medical opinion
. . . .").

  In this case, the ALJ recounted multiple allegations that Plaintiff shared with the CE, and
that the CE appeared to rely upon (*see, e.g.*, AR at 1014-15), but that either were unsupported by
or directly contradicted the record as a whole. For example, Plaintiff told the CE that he "had
ambulated with a cane daily" since 2006; however, the ALJ found that neither a medical need for
a cane nor any daily use of one was reflected in any medical records. (*See id.* at 35, 1014).
Plaintiff concedes that his allegation of daily cane use was "perhaps not completely accurate"
(*see* Doc. 17 at 23), and the ALJ was entitled to interpret the record accordingly, *see, e.g.*, *Lax*,
489 F.3d at 1084.[5] Similarly, although Plaintiff told the CE that he experienced hallucinations
and thought he had multiple personalities, the ALJ observed that these allegations were not
reflected in medical or mental health records until recently and discounted them on that basis.
(*See* AR at 35, 1014). Despite Plaintiff's claim to the contrary (*see* Doc. 17 at 22), the ALJ
properly discussed these "recent allegations that he has experienced . . . hallucinations since he
was a teenager" before rejecting them as inconsistent with the full record (*see* AR at 32-33), as
he was permitted to do, *see, e.g.*, *Lax*, 489 F.3d at 1084.

---

[5] Plaintiff posits that his allegations are "not fully unsupported" since he testified at his hearing that he uses a cane.
(*See* Doc. 17 at 23). But this argument misses the point: the ALJ discounted Plaintiff's allegations because the
medical evidence of record does not show that use of a cane was "medically necessary," and in fact at times shows
the opposite. (*See* AR at 30, 31, 35) (citing, *e.g.*, Dr. Franco's October 2017 finding that Plaintiff does not require
the use of assistive devices to ambulate). Plaintiff's conjecture that the ALJ or the CE may have misheard the name
of the provider who purportedly prescribed use of a cane (*see* Doc. 17 at 23-24) is also beside the point, since
Plaintiff does not point to any medical records from a "Dr. Lorish," much less records showing that this provider (or
any other) directed Plaintiff to use a cane on a daily basis.

Again, an ALJ may assign a lower weight to a psychological CE's opinions if those opinions, or if the subjective statements upon which they relied, find less support in the objective evidence and are inconsistent with the overall record. *See, e.g.*, 20 C.F.R. § 404.1527(c) (providing that an ALJ weighing medical evidence must consider, among other things, the "supportability" of an opinion and its "consistency" with "the record as a whole"); *Houston*, 180 F. Supp. 3d at 888. The ALJ's determination that the CE's reports relied in part on subjective symptom evidence that was inconsistent with the record as a whole was supported by substantial evidence. (*See* AR at 35). Likewise, the ALJ was permitted to evaluate whether the CE's opinions concerning Plaintiff's concentration and persistence abilities were inconsistent with a largely unremarkable mental status examination. *See* 20 C.F.R. § 404.1527(c)(3).[6] Although Plaintiff highlights that certain aspects of his mood and affect at the CE's evaluation were purportedly consistent with the mood and affect he presented at another provider's mental status examination five years earlier (*see* Doc. 17 at 20), Plaintiff does not explain how these consistencies were significantly probative to the ALJ's weighting of the CE's assessment of his functional limitations. Accordingly, Plaintiff does not show that the ALJ erred in failing to address this alleged consistency. *Cf. Clifton*, 79 F.3d at 1009-10 (holding that ALJ must discuss "significantly probative evidence that he rejects").

More troubling, though, is the ALJ's treatment of the Amended Evaluation, in particular the MMPI-2 results recorded therein. (*See* AR at 1028). According to the CE, the results from this second MMPI-2 administration could conservatively be understood as presenting

---

[6] To the extent that Plaintiff suggests that SSA regulations *required* the ALJ to recontact the CE for clarification in light of these inconsistencies (*see* Doc. 17 at 24), this argument misreads the regulations in question and is without merit. *See* C.F.R. § 404.1520b(b) (requiring ALJs to recontact sources or take other actions only "if after considering the evidence [they] determine [they] cannot reach a conclusion about whether [the claimant is] disabled"); *cf. White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2001) (citing former 20 C.F.R. § 416.912(e)) ("[I]t is not the rejection of the treating physician's opinion that triggers the duty to recontact the physician; rather it is the inadequacy of the 'evidence' the ALJ 'receive[s] from [the claimant's] treating physician' that triggers the duty.").

"tendencies or trends," but could "[l]ess conservative[ly]" be accepted as correlating with a variety of potential mental health conditions, including:

> anxious, tense, guilt-prone, ruminative, hypersensitive, use obsessive-compulsive defenses, misinterprets others, rebellious rage, aggressive acting out, underlying inferiority, persecutory fear, emotionally unstable/psychotic adjustment . . . [indicating] somatic disturbance, irritability, agitation, pain, anxiety, pessimism, depression, restlessness, tension, passive-dependent, concrete thinking, hostility, etoh [alcohol-related] problems with responsibilities, self-pity, [and] [an]ti-authoritarian attitude, most common in males.

(*See id.*).

However, the ALJ did not discuss the CE's findings from this second MMPI-2 test, much less the differences in findings between the first and second MMPI-2 administrations. (*Cf. id.* at 36). Rather, the ALJ stated that the CE had "*changed the results* on the MMPI-2 F scale," incorrectly suggesting that the new findings were attributable to the CE simply revising his interpretation of earlier results rather than administering a new test. (*See id.*) (emphasis added). Moreover, while the CE also candidly noted that these results were only of "borderline validity and reliability" (*see id.* at 1028), the ALJ did not appear to discount any of the CE's findings from the MMPI-2 assessment for this reason. Instead, the ALJ concluded that the CE's newer findings "appear to be an attempt to downplay the unreliability of the claimant's responses or testing and to preclude a finding of ability to perform unskilled work, rather than an accurate reflection of the claimant's functioning," and dismissed them on that basis. (*Id.* at 36). The ALJ pointed to nothing in the Amended Evaluation, or anywhere else in the record, indicating that the CE was motivated by any intention to "preclude a finding of ability to perform unskilled work" regardless of Plaintiff's actual functioning ability. (*Cf. id.* at 1027-30).[7]

---

[7] Earlier in his assessment, the ALJ observed that "[t]he claimant's attorney sent him to [the CE] for a consultative psychological evaluation." (AR at 35). However, the ALJ did not reject the CE's opinions on this basis (*see id.* at 35-36), which would have been improper in any case, *see, e.g.*, *Crowder v. Colvin*, 561 F. App'x 740, 743 (10th Cir. 2014) (unpublished) (citing, *e.g.*, *McGoffin v. Barnhart*, 288 F.3d 1248, 1253 (10th Cir. 2002)) (finding legal error

The Tenth Circuit has long recognized that an ALJ may not "mischaracterize or downplay evidence to support her findings." *Bryant v. Comm'r, SSA*, 753 F. App'x 637, 641 (10th Cir. 2018) (unpublished) (citing *Talbot v. Heckler*, 814 F.2d 1456, 1463-64 (10th Cir. 1987)). Of equal importance, "an ALJ may not 'make speculative inferences from medical reports' and may not reject a physician's opinion based on the ALJ's 'own credibility judgments, speculation or lay opinion.'" *Id.* at 643 (quoting *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002)). This rule derives in part from the principle that an ALJ may not "interpose his own 'medical expertise' over that of a physician." *See Kemp v. Bowen*, 816 F.2d 1469, 1476 (10th Cir. 1987). On the contrary, an ALJ is permitted to reject a medical source's opinions "only on the basis of contradictory medical evidence," *see McGoffin*, 288 F.3d at 1252, pursuant to the appropriate legal standards, *see, e.g.*, 20 C.F.R. § 404.1527(c). Further, an ALJ must provide "appropriate explanations for accepting or rejecting" medical opinions. *See* SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996).[8]

Here, the ALJ improperly mischaracterized the circumstances concerning the CE's second administration of the MMPI-2, in violation of controlling legal standards. *See Bryant*, 753 F. App'x at 641. And by rejecting the CE's MMPI-2 findings based on speculation concerning the CE's intentions and implied lack of credibility, the ALJ impermissibly substituted his own judgment for that of a medical professional. *See id.* at 643; *McGoffin*, 288 F.3d at 1252; *Kemp*, 816 F.2d at 1476; *see also Winfrey*, 92 F.3d at 1022 (finding that ALJ "clearly overstepped his bounds when he substituted his medical judgment for that of [a psychologist] by determining that

---

where ALJ determines that "a consulting examiner's opinion is necessarily less trustworthy when it is sought or obtained by the claimant").

[8] Although SSR 96-5p has been rescinded for claims filed on or after March 27, 2017, *see* SSR 96-2p, 2017 WL 3928298, at *1 (Mar. 27, 2017), that guidance remains entitled to deference here because Plaintiff's claims were filed before that date.

the results of [an] MMPI–2 test were not an adequate basis on which to make a diagnosis").[9]

Finally, by failing to properly address the CE's findings from that test—which may be

interpreted as facially consistent with more serious limitations than are included in the RFC—

while instead highlighting only those parts of the CE's report that appeared to be unsupported by

his findings or inconsistent with the record, the ALJ engaged in inappropriate picking-and-

choosing from the medical evidence. *See Carpenter*, 537 F.3d at 1265.

The Commissioner apparently does not dispute that the ALJ's reasoning here was

"invalid." (*See* Doc. 21 at 16). Although he nevertheless cites *Wilson v. Astrue*, 602 F.3d 1136,

1145-46 (10th Cir. 2010), to suggest that the ALJ's weighting of the CE's opinions should stand

because it was otherwise supported by substantial evidence (*see* Doc. 21 at 16), that decision is

inapposite here. Whereas the cited passage in *Wilson* was premised on the propriety of an ALJ's

determinations regarding the *claimant's* credibility, *see* 602 F.3d at 1145-46, an ALJ is forbidden

from making "his or her own credibility judgments" regarding a *medical source's* findings, *see*

*McGoffin*, 288 F.3d at 1252. Further, while the ALJ in *Wilson* found a claimant's complaints of

pain to be incredible for both permissible and impermissible reasons, *see* 602 F.3d at 1145-46,

the ALJ here cited *no* reasons for rejecting the CE's second round of MMPI-2 results other than

_____

[9] While the parties do not address this point, the undersigned observes that much of this reasoning also applies to the ALJ's assessment of the CE's finding of a "mild-moderate" limitation in Plaintiff's ability to understand and remember simple instructions in the Amended Evaluation (*see* AR at 1029), a slight downgrade from his finding of only a "mild" limitation in this ability in the original report (*see id.* at 1016). The ALJ rejected this new finding, too, on the basis that the CE was purportedly "attempt[ing] to . . . preclude a finding of ability to perform unskilled work." (*Id.* at 36). But again, rejection of the CE's opinions for this reason was improper. *See, e.g.*, *McGoffin*, 288 F.3d at 1252. For that matter, the ALJ's wholly speculative conclusion that the CE revised these findings in order to "correct[] an inconsistency" with his checklist assessment of Plaintiff (*see* AR at 36), rather than to reflect his medical judgment concerning updated test results, was equally impermissible. *See McGoffin*, 288 F.3d at 1252 (barring ALJs from making "speculative inferences from medical reports"). Indeed, the ALJ's speculative reasoning is implausible on its face, since the "slight" limitation in Plaintiff's ability to understand and remember simple instructions as noted in the checklist (*see* AR at 1019) could be deemed consistent with either a "mild" limitation (*id.* at 1016) *or* a "mild-moderate" limitation (*id.* at 1029) in that ability.

his impermissible mischaracterization of that evaluation and his improper findings on the CE's credibility and intent (*see* AR at 36).

At any rate, it is well-established that an ALJ's "[f]ailure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal," *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984), "even if the agency's findings are otherwise supported by substantial evidence." *Parker v. Comm'r, SSA*, 772 F. App'x 613, 617 (10th Cir. 2019) (unpublished) (citing, *e.g.*, *Byron*, 742 F.2d at 1234-35). As such, the presence of additional evidence in support of the ALJ's weighting does not overcome the Commissioner's failure to follow the governing legal standard in assessing the CE's MMPI-2 results and, consequently, in according lesser weight to the CE's Amended Evaluation opinions on this basis. *See id.* Even if the Commissioner's position were interpreted as a harmless-error argument—an interpretation that is unwarranted, since the Commissioner does not expressly argue that the ALJ's error was harmless and cites no relevant authorities on that point—the undersigned cannot "confidently say that no reasonable administrative factfinder, following the correct analysis" of the CE's MMPI-2 findings, "could have resolved the factual matter in any other way" because those findings are facially consistent with more restrictive limitations than the ALJ found. *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004).

The ALJ's assessment of the CE's opinions failed to comport with governing legal standards. Accordingly, the undersigned recommends that the Court grant Plaintiff's motion to remand on this basis and direct the ALJ to apply the correct legal standards when evaluating the CE's findings and according weight to his opinions.

## V.  CONCLUSION

**IT IS, THEREFORE, RECOMMENDED** that the Court **GRANT** Plaintiff's Motion to

Reverse and Remand for a Rehearing (Doc. 17) with a directive to the Commissioner to properly

evaluate the CE's opinions in accordance with controlling legal standards.


**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN FOURTEEN (14) DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1)(c). Any request for an extension of time must be filed in writing no later than seven (7) days from the date of this filing. A party must file any objections with the Clerk of the District Court within the fourteen (14) day period, together with any period for which an order is entered granting an extension of time, if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**


**KEVIN R. SWEAZEA**
**UNITED STATES MAGISTRATE JUDGE**