IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

WILLIAM LARGE,

      Plaintiff,

v.                                                      No. 1:20-CV-00005-RB-KRS

KILOLO KIJAKAZI, Acting Commissioner
of the Social Security Administration,[1]

      Defendant.

## ORDER GRANTING PLAINTIFF'S MOTION FOR ATTORNEY FEES PURSUANT TO THE EQUAL ACCESS TO JUSTICE ACT

THIS MATTER comes before the Court upon Plaintiff's Motion for Attorney Fees Pursuant to the Equal Access to Justice Act ("EAJA") (Doc. 27), filed April 27, 2021. Having reviewed the motion; the Commissioner's response in opposition (Doc. 28), filed May 6, 2021; and Plaintiff's reply (Doc. 29), filed May 13, 2021, the Court finds that the motion is well-taken and should be GRANTED.

### I.  SUBSTANTIAL JUSTIFICATION

EAJA was enacted on the premise that some individuals "may be deterred from seeking review of . . . unreasonable governmental action" due to the resource and expertise disparity between these individuals and the government. H.R. Rep. 96-1148, p.5. To reduce these deterrents, EAJA permits certain prevailing parties to recover attorney fees and other expenses unless the government can establish that its position was substantially justified or the Court finds that special circumstances make the award unjust. 28 U.S.C. § 2412(d)(1)(A). "Substantially justified" means that Commissioner's position was "justified to a degree that could satisfy a reasonable person . . . even though it is not correct." *Hackett v. Barnhart*, 475 F.3d 1166, 1172

---

[1] The Acting Commissioner is substituted as the proper Defendant pursuant to FED. R. CIV. P. 25(d).

(10th Cir. 2007) (quotations omitted). Generally, this means that EAJA fees "should be awarded where the government's underlying action was unreasonable even if the government advanced a reasonable litigation position." *Id.* at 1174 (quotation omitted).

Here, the Commissioner contends that her position was substantially justified notwithstanding the Court's ultimate finding that the administrative law judge ("ALJ") failed to follow the correct legal standards. To explain why the Commissioner's position is not well-taken, the Court first recaps the relevant factual background and arguments concerning the ALJ's evaluation of the opinions of the psychological consultative examiner ("CE"), (*see* Doc. 24 at 12-20) (relevant Proposed Findings and Recommended Disposition ("PFRD") section); (*see also* Doc. 25) (order adopting PFRD), before turning to the parties' arguments.

The CE conducted two examinations of Plaintiff two weeks apart, and he administered a Minnesota Multiphasic Personality Inventory ("MMPI-2") in the course of each examination. The CE concluded that the first MMPI-2 results featured an "invalid" F score that "preclude[d] a full and reliable profile." The second MMPI-2 results also presented an inconsistent F scale, but the CE found that these results presented "borderline validity and reliability." The CE's second report subsequently included a downgraded assessment of Plaintiff's limitations as compared to his first report. (*See* Doc. 24 at 12-13) (citations omitted).

The ALJ evaluated both of the CE's reports, and in doing so stated the following concerning the second report:

> The claimant submitted an "amended" report from Dr. Baum dated July 10, 2018. . . . On the amended report, Dr. Baum *changed the results* on the MMPI-2 F scale from "invalid" to "borderline validity and reliability.["] . . . . *Dr. Baum's changes appear to be an attempt to downplay the unreliability of the claimant's responses on testing and to preclude a finding of ability to perform unskilled work, rather than an accurate reflection of the claimant's functioning.*

(Administrative Record at 36) (internal citations omitted) (emphasis added). The ALJ pointed to no evidence supporting the conclusion that the CE "changed the results" from the MMPI-2 on any basis other than a proper medical assessment of Plaintiff's psychological testing. (*Cf. id.*).

The Court concluded that the ALJ had committed legal error by "mak[ing] speculative inferences from [the CE's] medical reports" based on something other than "contradictory medical evidence" (*see* Doc. 24 at 18) (quoting *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002)), thereby "impermissibly substitut[ing] his own judgment for that of a medical professional" (*see id.*) (citing, *e.g.*, *Bryant v. Comm'r, SSA*, 753 F. App'x 637, 641 (10th Cir. 2018) (unpublished)). The Court further concluded that because the CE's findings from the MMPI-2 were "facially consistent with more serious limitations than are included in the RFC," the ALJ "engaged in inappropriate picking-and-choosing from the medical evidence." (*See id.* at 19) (citing *Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008)). Finally, because the caselaw she cited was inapposite, and because the ALJ's failure to apply the correct legal standards was itself grounds for reversal, the Court rejected the Commissioner's contrary argument that substantial evidence otherwise supported the ALJ's assessment of the CE's findings. (*See id.* at 19-20) (quoting, *e.g.*, *Byron v. Heckler*, 742 F.3d 1232, 1235 (10th Cir. 1984)). After the undersigned proposed these findings and recommended remand pursuant to the Court's order of reference (*see* Doc. 7), the Commissioner did not file objections to these proposed findings and recommendations before the Court adopted them. (*See* Doc. 25).

In opposing the instant motion, the Commissioner now argues that her position was substantially justified for essentially the same reason she raised when opposing remand, *i.e.*, because the ALJ's weighting of the CE's opinions was allegedly supported by substantial evidence. (*See* Doc. 28 at 3-5). But as Plaintiff observes (*see* Doc. 29 at 4-5), the Commissioner

has never disputed—and still does not dispute—that the ALJ failed to apply the correct legal standards when he purported to substitute his own interpretation of the CE's test results in a manner contrary to the CE's own medical judgment. (*See* Doc. 24 at 19) (citing Doc. 21 at 16) (noting Commissioner's apparent concession that ALJ's reasoning was "invalid"). "Failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Byron*, 842 F.2d at 1235. This is true "even if the agency's findings are otherwise supported by substantial evidence." *Parker*, 772 F. App'x at 617. Because the ALJ's failure to follow governing legal standards was both readily apparent and never in dispute, and because such a failure is grounds for reversal, the Commissioner's position cannot be said to have been substantially justified.

The authorities cited by the Commissioner do not support a contrary conclusion. For example, the Commissioner cites *Lax v. Astrue*, 489 F.3d 1080 (10th Cir. 2007), for the proposition that "a court may affirm where, even setting aside one reason to discount a medical source's opinions, the ALJ provided other valid reasons that were supported by substantial evidence." (Doc. 28 at 4) (citing *Lax*, 489 F.3d at 1088-89). In *Lax*, the claimant obtained two low IQ test results, but the clinicians who administered those tests both "renounc[ed]" the results and opined that the claimant "was actually functioning in a higher range." *See* 489 F.3d at 1086. Relying on these findings and other record evidence, the ALJ determined that the IQ results were invalid and refused to rely on them in assessing the severity of the claimant's impairments. *See id.* Although the ALJ also impermissibly opined that a "large variation[]" in the results supported his determination, the Tenth Circuit affirmed given that the ALJ's findings as to the IQ results otherwise followed proper legal principles and were supported by substantial evidence. *See id.* at 1087-89. By contrast, the ALJ here "pointed to *nothing* in the Amended Evaluation, or anywhere

4

else in the record," to justify his determination that the MMPI-2 test results were invalid other than his own impermissible "speculative inferences," which were contrary to that of the medical source. (Doc. 24 at 17-18) (emphasis added). Rather than merely speculating on a medical source's motives, as was the case in other non-binding decisions cited by the Commissioner (*see* Doc. 28 at 4-5) (citations omitted), the ALJ "overstepped his bounds into the province of medicine" when he purported to interpret the validity and results of the CE's tests in the absence of any supporting medical evidence. *See Miller v. Chater*, 99 F.3d 972, 977 (10th Cir. 1996).

Finally, the Commissioner suggests that her position was substantially justified because the ALJ's actions amounted to a "singular, harmless error." (Doc. 28 at 5) (quotation omitted). But an ALJ's error is only harmless "where, based on material the ALJ did at least consider (just not properly), [the Court] could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). The Court has already rejected such a construction of the ALJ's error in this case "because [the CE's MMPI-2] findings are facially consistent with more restrictive limitations than the ALJ found." (Doc. 24 at 20). As such, the Commissioner cannot overcome the general rule that EAJA fees "should be awarded where the government's underlying action was unreasonable." *See Hackett*, 475 F.3d at 1172.

The Commissioner has not met her burden of showing that her position was substantially justified. Further, the Commissioner does not argue that special circumstances make a fee award unjust. Accordingly, Plaintiff is entitled to an award of EAJA fees.

## II.  REASONABLENESS OF FEE AWARD

"[O]nce the determination has been made that the government's position was not substantially justified, then the court should determine what fee is merited for all aspects of the

5

litigation that deal with creating a benefit to the claimant." *See Gallaway v. Astrue*, 297 F. App'x 807, 909 (10th Cir. 2008) (unpublished) (citing *Comm'r, INS v. Jean*, 496 U.S. 154, 161 (1990)). "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) (interpreting fee request under 42 U.S.C. § 1988); *see also Jean*, 496 U.S. at 161 (explaining that under EAJA, "the district court's task of determining what fee is reasonable is essentially the same as that described in *Hensley*").

Plaintiff seeks $7,140.70 in EAJA fees. (*See* Doc. 27 at 1). Pursuant to affidavits attached to Plaintiff's motion, this amount represents 32.9 hours of attorney work billed at $208 per hour (*see* Doc. 27 Ex. A), along with 3.5 hours of paralegal work billed at $85 per hour (*see* Doc. 27 Ex. B). The Commissioner has taken no position on the reasonableness of Plaintiff's fee request.

EAJA limits an attorney's fee award to $125 per hour "unless the court determines that an increase in the cost of living . . . justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A). The Court finds that Plaintiff's requested hourly rate reasonably reflects cost of living adjustments based on the Consumer Price Index.[2] The Court further finds that the requested paralegal hourly rate constitutes an appropriate prevailing market rate. *See, e.g.*, *Ammons v. Saul*, No. 18-cv-01212, 2021 WL 2351632, at *1, 4 (D.N.M. June 9, 2021) (awarding EAJA fees including $85 per hour paralegal rate); *see also Richlin Sec. Serv. Co. v. Chertoff*, 553 U.S. 571, 590 (2008) (permitting recovery of paralegal fees from Government under EAJA at "prevailing market rate"). Finally, the Court finds that the hours expended by Plaintiff's counsel in this litigation were reasonable.

---

[2] This reasonableness is reflected in the similarity of the hourly rates sought in other recent EAJA fee applications in this district. *See, e.g.*, *Montoya v. Kijakazi*, No. 1:19-cv-00271 JAP/LF, 2021 WL 3602427, at *4 (D.N.M. July 20, 2021), *PFRD adopted*, (Doc. 41) (D.N.M. Aug. 10, 2021) (approving $205 hourly rate); *Zambrano v. Saul*, No. 19-cv-00896 KWR/CG, 2020 WL 6262992 (D.N.M. Oct. 23, 2020) (approving $207 hourly rate); *Valencia v. Saul*, No. 1:19-cv-00002 KRS, 2019 WL 11590255, at *1 & n.1 (D.N.M. Dec. 18, 2019) (approving $202 and $204 hourly rates for work in 2018 and 2019, respectively).

*See, e.g.*, *Montoya v. Kijakazi*, No. 1:19-cv-00271 JAP/LF, 2021 WL 3602427, at *3 (D.N.M. July 20, 2021), *PFRD adopted*, (Doc. 41) (D.N.M. Aug. 10, 2021) (collecting cases for proposition that "the typical fee application in Social Security cases seeks attorney fees for not more than 40 hours of work").

### III.  CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Attorney Fees Pursuant to the Equal Access to Justice Act (Doc. 27) is GRANTED, and Plaintiff is awarded $7,140.70 in fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d). Said fees shall be paid directly to Plaintiff, not to counsel. *See Astrue v. Ratliff*, 560 U.S. 586, 591-93 (2010).

**IT IS FURTHER ORDERED** that, if Plaintiff's counsel receives attorney fees under both EAJA and 42 U.S.C. § 406(b), Plaintiff's counsel shall refund the smaller award to Plaintiff. *See Weakley v. Bowen*, 803 F.2d 575, 580 (10th Cir. 1986).

_____
**KEVIN R. SWEAZEA**
**UNITED STATES MAGISTRATE JUDGE**